The PEOPLE of the State of Colorado, Petitioner–Appellee, In the Interest of C.A.G., a Child, Respondent,

and Concerning Las Animas County Department of Social Services, Appellant.

No. 94CA0535.

Colorado Court of Appeals, Div. I.

Aug. 24, 1995.

Glenn Davis, District Attorney, Jon N. Barclay, District Attorney (on the briefs), Holly F. Stark, Deputy District Attorney, Trinidad, for petitioner-appellee.

Lee A. Hawke, guardian ad litem, for C.A.G.

Sisto J. Mazza, Trinidad, for appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Wade Livingston, Assistant Attorney General, Denver, for amicus curiae Dept. of Human Services.

Opinion by Judge CASEBOLT.

In this delinquency action concerning the child, C.A.G., the Las Animas County Department of Social Services (Department) appeals the trial court's order which granted it legal custody and required it to provide the child with an appropriate education while concurrently placing physical custody with

the child's parent and grandparent. We reverse and remand.

C.A.G. was adjudicated a delinquent after pleading guilty to possession of a handgun by a juvenile and possession of a deadly weapon on school grounds. As a result of these offenses, he was also expelled from school for one year by the school district authorities.

After a dispositional hearing, the trial court placed legal custody of the child with the Department while specifically leaving physical custody in the home of the child's mother and grandfather. The court directed the Department to provide services to the child and his family and authorized and directed it to provide C.A.G. with an "appropriate education." The Department was ordered to provide a written plan or report to the court describing how it proposed to meet the obligations imposed.

The court's order stemmed from its concern that unless the Department was ordered to provide C.A.G. with an education, he would go uneducated for the year of his expulsion from school. Further, the court determined that there was no other agency available to provide appropriate educational services.

The Department filed a request for reconsideration. It argued that the trial court had no authority to require it to provide the child with an appropriate education under these circumstances and that it did not have the funds, the expertise, the staff, or the facilities to provide an education for the child when it was not concurrently granted physical custody. The trial court denied the Department's motion to reconsider and to stay the order.

The Department filed a notice of appeal, and after initial briefs were filed with this court, we ordered supplemental briefs to address whether the Department, which was not an initial party to the delinquency proceeding, had a legally cognizable interest sufficient to prosecute the appeal.

We conclude that, under the circumstances present here, the Department does possess a legally cognizable interest. Further, we conclude that the court lacked statutory authority to order the Department to provide C.A.G. with an appropriate education without con-

currently authorizing placement of C.A.G. outside the home. Consequently, we reverse.

### I.

Because it appears from the record that the order expelling the child from school has lapsed, we first consider whether the appeal is moot.

▉ Generally, when issues presented in litigation become moot because of subsequent events, appellate courts will decline to render an opinion on the merits of an appeal. A case becomes moot when any judgment rendered therein can have no practical effect upon the existing controversy. *In re Marriage of Hartley,* 886 P.2d 665 (Colo.1994). However, if the issue is one of public importance or concerns an allegedly recurring constitutional violation that might otherwise escape judicial review, it may be considered even if for all practical purposes it has become moot. *Dempsey v. Romer,* 825 P.2d 44 (Colo.1992).

▉ Issues of short duration that involve temporary authority which has expired are similarly reviewable because they may recur without the possibility of judicial review. *See Gambler's Express, Inc. v. Public Utilities Commission,* 868 P.2d 405 (Colo.1994) (expiration of agency's temporary authority to issue an order granting the carrier's competitor authority to operate did not render appeal moot); *Beeson v. Kiowa County School District,* 39 Colo.App. 174, 567 P.2d 801 (1977) (electing to review the constitutionality of a school board policy which prohibited married students from participating in extracurricular activities, notwithstanding that the student who initiated the action had already graduated).

▉ The questions raised in this appeal concerning the trial court's authority to order the Department to provide an education to a delinquent child who remains in the physical custody of his parent require resolution of issues that may recur yet escape judicial review. *See In re Marriage of Finer,* 893 P.2d 1381 (Colo.App.1995) (reviewing trial court's authority to deny a hearing on motion

for temporary relief from automatic injunction preventing removal of children from state even though matter no longer in issue).

Here, expulsion of the child from school was mandatory. *See* § 22–33–106(1)(d), C.R.S. (1994 Cum.Supp.). The expulsion was scheduled to last for a full year. While the Department's obligations under the trial court's order have ceased, the underlying issue is one that will likely recur yet could, absent our review here, escape judicial review. Further, the issue is one of public importance. Accordingly, we elect to address the issues raised. *See Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission*, 620 P.2d 1051 (Colo.1980).

■ As stated above, our analysis of the circumstances present here leads us also to reject the People's contention that the Department is without a sufficient legally cognizable interest to prosecute this appeal.

An action in delinquency commences when the district attorney files a petition in delinquency. Section 19–2–304, C.R.S. (1994 Cum.Supp.). Thereafter, a summons is issued directed to the juvenile and his or her parent or guardian and the court is authorized to make the parent or guardian a respondent in the action. Section 19–2–306, C.R.S. (1994 Cum.Supp.). The court is further authorized to require the appearance of "any person it deems necessary to the action...." Section 19–2–306(4), C.R.S. (1994 Cum.Supp.).

Here, the only named parties to the action were the People, the juvenile, and the juvenile's parent. *See* § 19–2–305, C.R.S. (1994 Cum.Supp.) (specifying form of caption). The Las Animas County Department of Social Services was not named in the petition, nor was a summons ever directed to it. However, by granting legal custody of the child to the Department and requiring it to render reports, the court, in essence, required the Department to appear and, in our view, thereby created a sufficient cognizable interest to allow the Department to seek review of the trial court's order.

The People argue that under *People v. Ham*, 734 P.2d 623 (Colo.1987), an agency that is granted "custody" of an individual lacks authority to prosecute an appeal. We disagree.

In *People v. Ham, supra*, a criminal defendant over the age of twenty-one was sentenced to the custody of the Department of Corrections after conviction of a misdemeanor. Neither the People nor the defendant appealed the sentence. The Department of Corrections sought to intervene in the trial court in order to contest the legality of the trial court's sentence, also contending that it had an interest in determining how and for whom its bed space and other resources should be allocated. The Department of Corrections also filed a Crim.P. 35(a) motion in which it claimed that the sentence imposed was illegal.

The trial court denied the motion to intervene and rejected the Crim.P. 35(a) motion. The supreme court dismissed the appeal, concluding that: "[I]n the absence of truly exceptional circumstances ... the request of a third party to intervene in a criminal case should not be countenanced." *People v. Ham, supra*, 734 P.2d at 627.

The court further noted that allowing intervention by the Department of Corrections and allowing presentation of its arguments at the sentencing or post-conviction stage would require the sentencing court to explore such issues as the amount of financial resources available to the department, the most economically feasible allocations of those resources in administering the correctional process on a statewide basis, and the department's legal responsibility to receive a convicted offender under a sentence which, in the department's view, might not be in accordance with the law. The court concluded that those issues should not be permitted to encumber the criminal process.

Here, the People argue that the Department has likewise sought relief from a sentence imposed by the trial court, contending that it does not have the resources to provide for the juvenile's education when it does not have physical custody. Further, as in *People v. Ham, supra*, the Department contends that the sentence imposed was not in accordance with the statute, since the sentence divided legal and physical custody.

We conclude that there are, however, compelling circumstances which distinguish *People v. Ham, supra,* and the principles it enunciates, from the situation here.

First, juvenile delinquency proceedings are civil proceedings, not criminal. *S.A.S. v. District Court,* 623 P.2d 58 (Colo. 1981). As a statutory civil proceeding, a delinquency proceeding focuses upon providing "measures of guidance and rehabilitation for the child and protection for society" rather than fixing "criminal responsibility, guilt, and punishment." *Kent v. United States,* 383 U.S. 541, 554–555, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84, 94 (1966).

The state's role in a delinquency proceeding is not that of a prosecutor; rather, it stands in the role of *parens patriae* to protect the welfare of the child. *People in Interest of R.A.D.,* 196 Colo. 430, 586 P.2d 46 (1978). The Department, as legal custodian under the court order here, also acts in the role of *parens patriae. See S.A.S. v. District Court, supra.* Hence, the concerns the Department seeks to raise here arise in a much different context than the concerns asserted by the Department of Corrections in *People v. Ham, supra.*

Moreover, in *Ham,* the Department of Corrections acted neither as a party nor as *parens patriae* in seeking to intervene and was not, as here, required to appear and file a written plan or report detailing how it proposed to meet the obligations imposed.

Second, even if not technically denominated as a "party," a legal custodian nevertheless has certain rights in the delinquency proceeding. *See S.A.S. v. District Court, supra,* (legal custodian, although not listed specifically in statute, is an interested party to the delinquency action when determining who may demand a jury trial). It would be anomalous to recognize the rights of a legal custodian, yet determine that such person lacked authority to appeal orders of the trial court that affected it. *See also City & County of Denver v. Juvenile Court,* 182 Colo. 157, 511 P.2d 898 (1973) (welfare of child is statewide concern; department of social services is subagency of state whose status, functions, and responsibilities are de-

fined in statutes which bring its services under jurisdiction of juvenile court; therefore, it need not be joined as an independent party to the action); *City & County of Denver v. Brockhurst Boys Ranch,* 195 Colo. 22, 575 P.2d 843 (1978) (custodian of child was an interested party entitled to intervene when the child was placed in its care with court approval).

Third, in some civil proceedings even non-parties have standing to appeal orders of a trial court. If, following entry of final judgment, it appears that the non-party was substantially aggrieved by the disposition of the case in the trial court, a non-party has standing to appeal. *See Roberts–Henry v. Richter,* 802 P.2d 1159 (Colo.App.1990) (non-party deponent aggrieved by order denying a request for attorney fees, costs, and sanctions had standing to appeal); *Maul v. Shaw,* 843 P.2d 139 (Colo.App.1992) (when sanctions imposed against a litigant's attorney, the attorney is a real party in interest and may, in his own name, appeal).

Here, the Department was granted legal custody and ordered to provide the child with an appropriate education. By definition, a legal custodian is one who has "the right to the care, custody, and control of a child and the duty to provide food, clothing, shelter, ordinary medical care, education, and discipline for a child...." Section 19–1–103(18)(a), C.R.S. (1994 Cum.Supp.). The burden imposed by such an order may obviously "substantially aggrieve" the person upon whom it is placed. In addition, the Department has prosecuted this appeal in its own name and has otherwise met the requirements of C.A.R. 3(a) and (c). *See In re Marriage of Pontius,* 761 P.2d 247 (Colo. App.1988).

Consequently, we conclude that the Department has standing to appeal the trial court's order and is properly before us as an appellant.

II.

The Department contends that the trial court erred in ordering it to provide C.A.G. with an appropriate education under the circumstances here. Relying on § 19–2–

703(1)(j), C.R.S. (1994 Cum.Supp.), the Department argues that it cannot be required to provide for the education of a child when legal custody and physical custody are divided and it has only legal custody. Rather, it asserts that the statute authorizes a court to place legal custody (which includes the duty to educate) with the Department only if, concurrently, physical placement *outside the home* is authorized. We agree.

Section 19–2–703(1)(j), C.R.S. (1994 Cum. Supp.) states, in pertinent part, that after a determination of delinquency is made, the juvenile court, "following the criteria for out-of-home placement established pursuant to section 19–2–602, may place legal custody in the county department of social services or a child placement agency for placement in a family care home or a child care center."

■■■ A court's primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070 (Colo.1992). To determine that intent, we look first to the statutory language. *Woodsmall v. Regional Transportation District,* 800 P.2d 63 (Colo.1990). When the language is clear and unambiguous, there is no need to resort to interpretative rules of statutory construction and the statute must be applied as written. *Jones v. Cox,* 828 P.2d 218 (Colo.1992).

■■■ When a court construes a statute, it must consider the statute as a whole. *R & F Enterprises, Inc. v. Board of County Commissioners,* 199 Colo. 137, 606 P.2d 64 (1980). Further, we must construe the whole of the act to give a consistent, harmonious, and sensible effect to all its parts, *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976), and we must consider the ends that the statute was designed to accomplish and the consequences that would follow from alternative constructions. *Mooney v. Kuiper,* 194 Colo. 477, 573 P.2d 538 (1978). We are not permitted to add an important limitation or qualification to a statute. *Adams v. Colorado Department of Social Services,* 824 P.2d 83 (Colo.App.1991).

We construe the statute here to permit placement of legal custody of a child in the county department of social services when the department will be placing the child out of the home. The plain language of the statute directs the court to follow criteria for *out-of-home placement* when it determines to place legal custody in the county department of social services. Further, the grant of authority to the court under § 19–2–703(1)(j), authorizes the court to place legal custody in the county department *"for placement in a family care home or a child care center."* That clause is a subordinate clause which modifies the grant of authority previously given. The word "for" in this context specifies the purpose of the legal custody placement and thus limits the court's ability to grant legal custody to the county department unless that purpose is fulfilled.

We recognize that the trial court's main concern was that the child should receive an education. However, the General Assembly was mindful of that concern and provided for education of delinquent children when they are placed *out of the home.* See § 19–2–1101, C.R.S. (1994 Cum.Supp.) (Department of Human Services required to establish and operate facilities for education of juveniles committed to its custody under § 19–2–703); § 19–2–1115(3), C.R.S. (1994 Cum.Supp.) (school boards of districts which a juvenile detention facility serves or in which such a facility is located shall furnish, when requested, teachers and books needed for the proper education of children in the detention facility).

We therefore conclude that the trial court erred in requiring the Department to provide an education to the child while concurrently placing physical custody with the child's parent and grandparent. Consequently, the determination of the trial court is reversed insofar as it ordered the Department to provide C.A.G. with an appropriate education, and the cause is remanded to the trial court for further proceedings, if necessary, consistent with the views expressed in this opinion.

PLANK and TAUBMAN, JJ., concur.